UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA       :
                               :
        v.                     :        CRIMINAL NO. 1:20-cr-106 (RC)
                               :
LIRIM SYLEJMANI,               :
        Also known as          :
        Abu Sulayman al-Kosovi, :
                               :
        Defendant.             :
                               :

**REPLY OF THE UNITED STATES TO DEFENDANT'S RESPONSE
TO MOTION *IN LIMINE* TO ADMIT ISIS DOCUMENTS
RELATED TO DEFENDANT AND HIS CO-CONSPIRATORS**

The United States of America, by and through its attorney, the United States Attorney for

the District of Columbia, respectfully submits its reply to the defendant's response to the motion

*in limine* seeking admission of documents of the Islamic State in Iraq and al-Sham (hereinafter

referred to as "ISIS") in which the defendant and his role in ISIS are identified.  The defendant

argues that the government should not be permitted to introduce this evidence, though the

defendant does not directly contest the fact that the documents are what they purport to be.  For

the reasons set forth below, the defendant's challenge to the admissibility of this evidence must

fail.[1]

The defendant first asserts that the government cannot proffer the documents because

there has been no compliance with Federal Rule of Evidence 604.  Response at p.2.  The

defendant specifically claims that "[t]he lack of qualified translation violates FRE 604." *Id.*

---

[1] The defendant does not appear to challenge the admissibility of the video of ISIS members, including the defendant, attending a wedding that was recorded in Manbij, Syria in the spring of 2016.  As stated in the government's initial Memorandum in Support of its Motion *in Limine*, the defendant identified the video as well as himself pictured in the video, during his post-*Miranda* interview with law enforcement on April 21, 2019.

1

Federal Rule of Evidence 604, by its terms, refers to requirements for interpreters.  While the rule does not define "interpreter," it has long been recognized that FRE 604 applies only to individuals who translate the testimony of witnesses for the trier of fact.  *See* 27 Charles Allen Wright & Victor James Gold, Federal Practice & Procedure Evidence § 6053, 27 Fed. Prac. & Proc. Evid. § 6053 (2d ed.) (hereafter referred to as Wright & Gold).  The Advisory Committee Notes to the 1972 proposed rules state that Rule 604 implements Fed. R. Civ. P. 43(f) and Fed. R. Crim. P. 28(b).  As Wright and  Gold's treatise further explains, the Advisory Committee's Note to the 1966 amendment to Federal Rule of Criminal Procedure 28 clarifies the meaning of the term, "interpreter:"

> General language is used to give discretion to the court to appoint interpreters in all appropriate situations.  Interpreters may be needed to interpret the testimony of non-English speaking witnesses or to assist non-English speaking defendants in understanding the proceedings or in communicating with assigned counsel.  Interpreters may also be needed where a witness or a defendant is deaf.

*Advisory Committee Notes, 1966 Amendments, Subdivision (b).*  Wright and Gold note that this definition of "interpreter" is consistent with the definition traditionally used in common law.  27 Fed. Prac. & Proc. Evid. § 6053; *See* 3 Wigmore, Evidence (Chadbourn rev. 1970) at § 811. Thus, Rule 604, by its terms, does not appear to govern the admissibility of foreign language documents.

Aside from the plain language of Rule 604, its placement in Article VI of the Rules of Evidence relating to witnesses is a strong indication that Congress and the drafters of the rule intended it to apply only to interpreters for live witnesses.  Rule 601 relates to the competency of witnesses to testify; Rule 602 requires that a witness testify based on personal knowledge; Rule 603 mandates that before testifying, a witness takes an oath to testify truthfully; Rule 605 prohibits a judge from testifying as a witness; Rule 606 prohibits a juror from testifying as a

witness; Rule 607 establishes that any party may impeach a witness; Rules 608 and 609 limit the nature and timing of challenges to a witness's character; Rule 610 prohibits the use of evidence of a witness's religious beliefs or opinions against the witness; Rule 611 sets forth the methods and order of examining witnesses and presenting evidence through witnesses; Rule 612 relates to the use of writings to refresh a witness's memory; Rule 613 governs the use of a witness's prior statements in the examination of witnesses; Rule 614 authorizes the court to call and examine witnesses; and Rule 615 concerns the rule excluding witnesses from the courtroom.

Significantly, the cases cited by the defendant address the application of Rule 604 in the very context described in the Advisory Committee Notes to the 1966 amendments to Federal Rule of Criminal Procedure 28(b).  In *United States v. Ball,* 988 F.2d 7 (5th Cir. 1993), the defendant was deaf and the Court appointed his wife as the interpreter of his speech to elicit his testimony at trial in a way that was understandable to the jury.  *Id.* at 9.  The Fifth Circuit held that the appointment of the defendant's wife as the interpreter was neither an abuse of discretion nor plain error.  *Id.* at 10.  Similarly, in *United States v. Addonizio,* 451 F.2d 49 (3rd Cir.), *cert. denied,* 405 U.S. 936 (1972), the Third Circuit found no error in the trial court's use of a witness's wife as an interpreter during her husband's trial testimony.  The witness was unable to speak beyond a loud mumble and had difficulty making himself understood due to his physical condition.  His wife's constant attendance at her husband's hospital bedside gave her a special ability to understand his words.  Her service as an interpreter allowed the jury to understand her husband's testimony.  *Id.* at 68.  Notably, therefore, the use of the close relative as interpreter for testifying witnesses in *Ball* and *Addonizio* was upheld by appellate courts following consideration of the applicable rule and the circumstances of the case.

Courts have recognized that Rule 604 only applies to interpreters who translate the testimony of witnesses on the stand and not to individuals who translate documents. *United States v. Armijo,* 5 F.3d 1229, 1235 (9th Cir. 1993); *United States v. Odeh,* No. 13-cr-20772, 2014 WL 5473042 at *6 (E.D. Mich. Oct. 27, 2014). "Rule 604 . . . does not apply to witnesses who take the stand and testify concerning the meaning in English of documents or other out of court statements. These are conventional expert witnesses who are subject to cross-examination, [FRE] 702, and the requirements of Rule 603." Wright & Miller, 27 Fed. Prac. & Proc. Evid. § 6053.

In this case, the government seeks to admit ISIS documents that consist of Excel spreadsheets of payroll and roster data of ISIS members. The records generally include the following information: (1) ISIS member's name; (2) census number; (3) kunya (or nom de guerre); (4) number of wives; (5) number of children; (6) monthly stipend payments received by the ISIS member; and (7) assigned battalion. The government is prepared to offer these documents into evidence through the witnesses identified in its Memorandum in Support of the Motion *in Limine*, and, if necessary, will include as a witness an additional language specialist certified in the translation of documents from Arabic into English.[2] This witness will be available for examination and cross-examination at whatever hearing is scheduled to consider the Motion *in Limine*, and before testifying, would take the appropriate oath to translate the documents fully and accurately. The defendant's challenge to the admissibility of the documents based upon Rule 604 should be denied.

---

[2] There are at least three witnesses among the currently identified witnesses proffered by the government who would be in a position to translate the Arabic language documents into English for the court and the defense at a hearing.

The defendant then attempts to challenge the admissibility of the documents, claiming that the government has failed to produce sufficient evidence to authenticate them pursuant to Federal Rule of Evidence 901.  Response at p.2.  Rule 901(a) requires that the government only make a prima facie demonstration that the evidence is what it purports to be.  This Circuit has long recognized that documentary evidence satisfies the authentication requirements of  Rule 901 if the proponent makes a showing "sufficient to permit a reasonable juror to find that the evidence is what its proponent claims."  *United States v. Fadayini,* 28 F.3d 1236, 1241 (D.C. Cir. 1994); *United States v. Rembert,* 863 F.2d 1023, 1027 (D.C. Cir. 1988); *United States v. Blackwell,* 694 F.2d 1325, 1330 (D.C. Cir. 1982).  In affirming that Libyan telephone records met the authentication requirements of Rule 901 and were admissible, the Circuit noted that the government was not required to conclusively prove authenticity.  Since the requirements of Rule 901 were met by the government's evidence, the defendant's arguments challenging that evidence go to *weight,* not to its *admissibility*.  *United States v. Khatallah,* 41 F.4th 608, 623 (D.C. Cir. 2022) (citations omitted); *see also* 31  Fed. Prac. & Proc. Evid. § 7104 (2d ed. April 2022 update) ("[T]he jury retains the power to determine what weight to give evidence in light of any questions concerning its authenticity."); *accord United States v. Workinger,* 90 F.3d 1409, 1415 (9th Cir. 1996) ("Once the prima facie case for authentication is met, the probative value of the evidence is a matter for the jury."); *United States v. Paulino,* 13 F.3d 20, 23 (1st Cir. 1994).

The defendant challenges the government's proffered witnesses as not being people with knowledge that the documents are what they claim to be.  The defendant presumes that the identified witnesses are not people with knowledge, stating that the government's witnesses "were not there and will likely not be able to attest to" various facts that he claims would "bear directly on the proposed witness's ability to properly attest that the documents at issue are true,

accurate, and unaltered." Response at p.4. The government submits that the defendant has no basis for concluding that the government's witnesses are not people with knowledge. In any event, the defendant misconstrues the requirements of Rule 901 when he states that these witnesses must attest that the documents at issue are "true, accurate, and unaltered." All that is required is that there is evidence to support the finding that the documents are what they purport to be. As this court has noted, Rule 901 does not require that the proponent "rule out all possibilities inconsistent with authenticity, or … prove beyond any doubt that the evidence is what it purports to be." *United States v. Hassenshahi,* 195 F. Supp.3d 35, 48 (D.D.C. 2016).

Contrary to the defendant's presumptions, the proffered testimony of Paolo Irani is expected to reflect his personal experience with the receipt of this evidence from Iraqi authorities who unearthed the evidence from ISIS-controlled territory. The government will present testimony of a cooperating witness who is a former member of ISIS. This witness is expected to explain, from personal experience, how and why ISIS members provided the type of information contained in the documents and how he personally prepared or worked on these types of documents created as part of the ISIS bureaucracy. This witness is expected to testify that the documents show that ISIS routinely tracked important data concerning its soldiers and their families and collected that data as a basis for financially supporting them. The government is expecting to call a foreign coordinator who received battlefield evidence from military operations in Iraq and Syria, which included electronic media containing a document that included information about the defendant and his dependents. The government may authenticate a document solely through circumstantial evidence, including the circumstances surrounding its discovery. *See United States v. Smith,* 918 F.2d 1501, 1510 (11th Cir. 1990); *see also United States v. Williams,* 865 F.3d 1328, 1343 (11th Cir. 2017) (authentication of a "zarpe," a

Colombian document that included the names of defendants and the ports of call, seized from the vessel upheld; the document contained "precise information typically found on a zarpe and … was found aboard [the vessel]"); *United States v. Echeverri,* 982 F.2d 675, 679 (1st Cir. 1993) (drug ledger sufficiently authenticated; ledger entries written on the back of a pay stub found in a small apartment; "The earnings statement was clearly identified with Echeverri – it was, after all, a recapitulation of his wages, reposing in his apartment.").

Moreover, contrary to the defendant's assertions, the authentication requirements of Rule 901 do not require the government to establish who created the documents. *Smith,* 918 F.2d at 1510; *see also United States v. Reyes,* 798 F.2d 380, 383 (10th Cir. 1986); *United States v. Helmel,* 769 F.2d 1306, 1312 (8th Cir. 1985); *United States v. Drougas,* 748 F.2d 8, 26 (1st Cir. 1984); *United States v. De Gudino,* 722 F.2d 1351, 1355 (7th Cir. 1983). Some of the proffered witnesses do have personal knowledge that the documents are ISIS documents, based upon their experience collecting and reviewing such evidence in Iraq and Syria during the continued hostilities in that region. The cooperating witness will offer even more direct, personal experience, as an individual who traveled to the region to join ISIS and thereafter, to serve in an administrative capacity for ISIS, assisting in the creation and updating of records such as those offered for admission in this case.

The government can also establish authenticity of the proffered evidence in this case through the distinctive characteristics of the ISIS documents. The anticipated testimony of the witnesses identified by the government will explain the activities and structure of ISIS, the recruiting efforts that resulted in foreigners traveling to Syria and Iraq to join ISIS, the bureaucracy created by ISIS to manage its personnel and territory, and the discovery of evidence following the defeat and retreat of ISIS from certain strongholds in Syria and Iraq. The

anticipated testimony of the cooperating witness will provide a personal account of an individual who joined ISIS and worked in an administrative capacity, creating and working on existing ISIS documents with very similar characteristics to those proffered in this case.

The authenticity of the documents in this case is supported by statements made by the defendant to Special Agents of the Federal Bureau of Investigation during a voluntary interview conducted after his capture by the Syrian Defense Forces.  During that interview, the defendant recounted, among other things, his travel to Syria with his family, his continued travel inside Syria with other like-minded recruits committed to joining ISIS, the intake process during which he provided identification information for himself and his family to an ISIS member when he arrived at the first safehouse in Syria, his training shortly after he joined the organization, and his military assignments following that training.  During the interview with the FBI, the defendant also identified himself in a video taken in Syria, which, according to the defendant, also included images of numerous other men who were members of ISIS.  The defendant's statements are corroborated by messages he sent to members of his family outside of Syria, advising them of his whereabouts and activities in Syria.

The content of the proffered evidence, the testimony of the proposed witnesses, together with the circumstances of the case, clearly satisfies the threshold for a determination of authenticity.  *Hassanshahi*, 195 F. Supp.3d at 48 ("[t]he threshold for the Court's determination of authenticity is not high," and "the proponent's burden of proof for authentication is slight.").

While the defendant attempts to distinguish the cases cited by the government in its Motion *in Limine*, those cases, in fact, present evidence of authenticity quite analogous to the testimony anticipated from the proposed government witnesses in this case.  Moreover, the defendant cannot convincingly distinguish this case from *United States v. Musaibli,* 42 F.4th 603

(6th Cir. 2022), which involved some of the same documents as proffered here for admission, and which were found to be properly authenticated and admitted at trial.  Significantly, the defendant concedes that the documents "appear to be contain information arguably consistent with [his] identifying information."  Response at p.6.  While the defendant goes on to challenge the quantum of information necessary for authentication under FRE 901(b)(4), the Advisory Committee Notes to the 1972 Proposed Rules are most instructive.  First, the Note to subdivision (b) states that the examples identified in FRE 901(b) "are not intended as an exclusive enumeration of allowable methods but are meant to guide and suggest, leaving room for growth and development in this area of the law."  *See also Rembert,* 863 F.2d at 1026 ("Rule 901 expressly prefaces [FRE 901(b) subsections] by the language that they function '[b]y way of illustration only, and not by way of limitation,' thereby leaving room for the general application of Rule 901(a).")  As to the specific Note relating to FRE 901(b)(4), the Advisory Committee explains, "The characteristics of the offered item itself, considered in the light of circumstances, afford authentication techniques to great variety."[3]

---

[3] The government was unable to locate in the 1972 Advisory Committee Note to FRE 901(b), Example 4 the phrase quoted by the defendant on page 6 of his Response.  In fact, the phrase quoted by the defendant would not undermine the authenticity of the documents to be proffered in this case, based upon the anticipated testimony.  The nature and formatting of the documents, the specific information elicited from the defendant and contained in those spreadsheets, including the defendant's kunya, his census number and his battalion assignment within ISIS, would not be known to a large number of persons.  The information contained in the documents, therefore, is unlike the information contained in an advertisement for a defendant's business, at issue in the unpublished opinion cited by the defendant, and more similar to the information in *United States v. Jones*, 107 F.3d 1147 (6th Cir.1997), a case discussed in the unpublished *Mills* opinion, where the Sixth Circuit held that a letter was sufficiently authenticated because it included details about the recipient's family members that only the purported author could have known. 107 F.3d at 1150.  The documents proffered in this case also include details about the defendant's family members that only the defendant could have known.

The government submits that the proposed testimony of its identified witnesses will establish the distinctive characteristics of the proffered documents, with contents corroborated by the defendant himself, coupled with the specific circumstances of their discovery, amply supports a determination that the ISIS documents satisfy the authentication requirements of FRE 901.

The defendant attempts to challenge the admission of the ISIS documents as co-conspirator statements. As government witness Hassan Hassan will explain, ISIS attempted to establish a fully functioning, centrally-controlled and organized hierarchical government within its territory. Mr. Hassan is expected to explain that ISIS created various subcomponents within its bureaucracy to manage the population within its territory and provide for its members as well as the general population in the geographic area it controlled. The ISIS documents reflect an important goal of the conspiracy that the defendant joined, a conspiracy to create and run a nation living under Sharia law. The documents show the intention of ISIS to keep accurate records and give the appearance to recruits, family members and others of being a fully functioning government. The ISIS documents reflect statements made by the defendant's co-conspirators in ISIS and were made in furtherance of the conspiracy to provide material support to ISIS. The documents identify the defendant as a fighter assigned to a specific ISIS battalion and reflect the payments to be provided to him and his family for his service in ISIS. As the Sixth Circuit noted, "statements generated by ISIS's bureaucratic apparatus to support the mission of providing the terrorist group with personnel and services . . . fit comfortably within the alleged conspiracy's scope." *Musaibli,* 42 F.4th at 618 (defining the scope of the conspiracy for purposes of FRE 801(d)(2)(E) with reference to the conspiracy to provide material support and resources to ISIS, with which the defendant was charged). Moreover, as *Musaibli* held, it does not matter that ISIS was a large organization, but rather, there must be a "unity of interests"

of the co-conspirators.  *Id.*; *see also United States v. Russo,* 302 F.3d 37, 46 (2d Cir. 2002) (in

large conspiracies, Rule 801(d)(2)(E) admissibility "depends on the nature of the statement

offered – in particular, what objective it sought to advance – and whether the defendant was

jointly engaged with the declarant in the conspiracy seeking that objective."); *United States v.*

*Gigante,* 166 F.3d 75, 82 (2d Cir. 1999) (finding that Rule 801(d)(2)(E) must expand to admit

statements of a large mafia conspiracy).

Law enforcement conducted a post-*Miranda* interview with the defendant on April 21,

2019, after he was captured by the Syrian Defense Forces.  During that interview, as Special

Agent Michael Merletti can testify, the defendant recounted in detail his radicalization, his plans

for joining ISIS, his travel to Syria with his family, the intake process for joining ISIS, his

training with ISIS and his pledge of allegiance to ISIS at the conclusion of that training, and his

military assignments following that training.  The defendant also sent messages to members of

his family living outside of Syria, confirming his presence "in the Islamic State" his training and

his commitment to the goals of ISIS, to a "world . . . free from the infidels."  All of this evidence

establishes that the defendant knowingly and voluntarily joined ISIS and the conspiracy to

provide material support to the organization.  While the defendant cites cases relating to

withdrawal from a conspiracy, *see* Response at p.8, there is simply no evidence that the

defendant in this case withdrew from the conspiracy to provide material support to ISIS, nor does

the defendant allege that he did withdraw from that conspiracy.  The only circumstance that

ended the defendant's participation in the conspiracy was his capture by Syrian Defense Forces

on February 27, 2019.

The defendant also challenges the admission of the ISIS documents pursuant to FRE 807, generally claiming a lack of trustworthiness[4] and reiterating an assertion that the documents are not accurate. Response at pp. 11-12. The government submits that the ISIS documents present an exceptional circumstance warranting their admission under FRE 807 for the reasons stated in its initial Memorandum.

Finally, defendant's argument that the Court should exclude the ISIS documents from evidence based on Federal Rule of Evidence 403 is meritless and should be rejected. *See* Response at pp. 9-11. The proffered documents are highly probative of the defendant's role in the conspiracy to provide material support to ISIS, and the defendant's challenge to their admission based on academic writings criticizing the use of FRE 801(d)(2)(E) has no relevance in a case such as this one, where the defendant self-radicalized, voluntarily traveled with his family to live in "the Islamic State," trained for military duty for ISIS, declared allegiance to ISIS, was deployed to an ISIS battalion and was paid for his service during his membership in ISIS. Even under a traditional FRE 403 analysis, the probative value of the proffered evidence substantially outweighs any danger of unfair prejudice, confusion of issues, misleading the jury, undue delay or wasting the time of the Court. The proffered evidence is uniquely probative of the defendant's guilt, and therefore, its admission will not needlessly present cumulative evidence.

---

[4] The defendant attempts to argue that the failure of the government to seek admission of the ISIS documents as business records, pursuant to FRE 803(6), somehow demonstrates a lack of trustworthiness of the documents, and then cites a case addressing the admissibility of statements on a federal government form under the business records exception to the hearsay rule. *See* Response at p.12. The government has not sought admission of the ISIS documents as business records because they do not fit the definition of business records, not because they lack trustworthiness. The defendant's argument in this regard, therefore, is irrelevant to the circumstances of this case.

Wherefore, the United States respectfully moves this Court to grant its motion *in limine* to admit the proffered ISIS documents.

Respectfully submitted,

MATTHEW M GRAVES
United States Attorney
D.C. Bar No. 481052

By:  */s/Steven Wasserman*
Brenda J. Johnson
D.C. Bar No. 370737
Steven B. Wasserman
D.C. Bar No. 453251
Assistant United States Attorneys
601 D Street, N.W.
Washington, D.C. 20530
(202) 252-7801 -Johnson
(202) 272-7719-Wasserman
Brenda.Johnson@usdoj.gov
Steve.Wasserman@usdoj.gov

Jennifer E. Levy
D.C. Bar No. 291070
Trial Attorney
Counterterrorism Section
U.S. Department of Justice
950 Pennsylvania Avenue, N.W.
Washington, D.C.  20530

## CERTIFICATE OF SERVICE

I hereby certify that, on January 29, 2024, I caused a copy of this motion to be served, via ECF upon counsel for the defendants, Ubong Akpan and Sabrina Shroff.

*/s/Steven Wasserman*
*/s/ Steven B. Wasserman*
*/s/ Brenda J. Johnson*

13